## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINA M. LEO,<br><br>Plaintiff,<br><br>v.<br><br>AHMED S. J. AL NASER, MUNA S. M. N.<br>AL NAJADI, and STATE OF KUWAIT<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Regina Mary Leo, by and through her attorneys, alleges as follows:

### INTRODUCTION

1.    Plaintiff brings this action to obtain damages for having been subjected to slavery and slavery-like practices in violation of United States and international law. These practices include trafficking, involuntary servitude, forced labor, enslavement, and torture. Plaintiff also seeks unpaid wages under Federal and Maryland labor law and seeks damages and compensation under Maryland common law for breach of contract, unjust enrichment, fraud, conversion, and battery.

2.    Plaintiff brings this action against her former employers, Brigadier General Ahmed S. J. Al Naser ("Defendant Al Naser"), a Kuwaiti diplomat previously stationed in the United States, and his wife Muna S. M. N. Al Najadi ("Defendant Al Najadi") (collectively, the "Individual Defendants").

3.    Plaintiff also brings this action against the State of Kuwait. Defendant State of

Kuwait knowingly played a significant role in and provided material and practical assistance and

encouragement to the Individual Defendants in their trafficking of Plaintiff and their placing her

in conditions of forced labor. Moreover, at all relevant times, the State of Kuwait employed

Defendant Al Naser. The State of Kuwait, therefore, is responsible for the tortious and

commercial conduct of its agent, Defendant Al Naser. The State of Kuwait is also responsible

for the tortious and commercial conduct of Defendant Al Naser's wife, Defendant Al Najadi,

because Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her

household duties.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1351.

This Court also has jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C.

§ 1330 and 1602 *et seq.*, and the Alien Tort Claims Act, 28 U.S.C. § 1350. This Court has

supplemental jurisdiction over related state law claims under the doctrine of pendent jurisdiction

and under 28 U.S.C. § 1367. Supplemental jurisdiction over those claims is appropriate because

they arise from the same common nucleus of operative facts from which the federal claims arise.

5.    Venue is proper in this district court under 28 U.S.C. § 1391(d) and (f)(4) because

the defendants are a foreign state and citizens of a foreign state.

## THE PARTIES

6.    Plaintiff is a citizen of India who currently resides in the Commonwealth of

Virginia. At the time of the events that give rise to this Complaint, Plaintiff was legally residing

in the United States by virtue of a duly issued U.S. visa. Plaintiff worked for the Individual

- 2 -

Defendants in the United States from approximately September 29, 2005 to May 5, 2006. At all relevant times, Plaintiff resided in the Individual Defendants' home at 9240 Vendome Drive, Bethesda, Maryland 20817.

7.    Defendant State of Kuwait is a foreign state under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330 and 1602 *et seq.* Defendant Kuwait maintains a diplomatic presence in the United States through its Embassy located at 2940 Tilden Street NW, Washington, D.C. 20008.

8.    Upon information and belief, Defendant Al Naser is a citizen of Kuwait who was last known to reside in the State of Maryland. At all relevant times, Defendant Al Naser was stationed in Washington, D.C. as an Attaché to the Embassy of the State of Kuwait. At all relevant times, he resided along with his wife, Defendant Al Najadi, and their daughter at 9240 Vendome Drive, Bethesda, Maryland 20817.

9.    Upon information and belief, Defendant Al Najadi is a citizen of Kuwait who was last known to reside in the State of Maryland. At all relevant times, Defendant Al Najadi lived in Bethesda, Maryland and resided, along with her husband, Defendant Al Naser, and their daughter at 9240 Vendome Drive, Bethesda, Maryland 20817.

## GENERAL ALLEGATIONS

### (Recruitment Into Forced Labor)

10.    Plaintiff was born to a poor family in Thiruvannamalai, India. Her parents died when she was a child. Although she had an aunt and uncle, they were unwilling or unable to support her and, without any brothers or sisters, she grew up alone in an orphanage. Plaintiff was

educated in the Tamil language through the eighth grade and she speaks only a little English and no Arabic.

11.     After leaving the orphanage at the age of twenty, Plaintiff worked over the course of approximately ten years as a housekeeper, a garment factory worker, and a caretaker for mentally disabled children. Hoping to build a better life, Plaintiff saved her money and, eventually, left India to find work in Kuwait.

12.     In or about March 2005, Plaintiff found employment with a Kuwaiti family as a housekeeper. Specifically, she was hired by the family of Naval Al Najadi, the younger sister of Defendant Al Najadi. She was paid a monthly salary of 40 Kuwaiti Dinars ("KD") (approximately $138 U.S. Dollars), which was more than she would have earned working in India. The work included cooking, laundry, and house-cleaning, and was divided among Plaintiff and two other housekeepers. Plaintiff worked for the Al Najadi household for approximately seven months.

13.     In August or September of 2005, Defendant Al Naser and his wife Defendant Al Najadi offered Plaintiff a job in the United States as their housekeeper. The Individual Defendants promised Plaintiff that she would be paid a salary of $1150 U.S. Dollars a month, would work only 40 hours a week and would have two days off each week for rest, and her work would be limited to house cleaning. In case this was not sufficiently enticing, the Individual Defendants also threatened to send Plaintiff back to India if she did not accept their offer. Relying on the Individual Defendants' promises and in view of their threats, Plaintiff accepted their offer and agreed to work for the Individual Defendants in the United States.

14.     Upon information and belief, the Individual Defendants (through an agent) sought a visa for Plaintiff at the United States Embassy.  Upon information and belief, in order to encourage the United States government to issue a visa to Plaintiff, the Individual Defendants (through an agent) represented to an Embassy official that the Individual Defendants would provide Plaintiff with an employment contract compliant with United States law.  Upon information and belief, the Individual Defendants (through an agent) produced and submitted an employment contract for Plaintiff's services and labor to the United States Embassy because it is a document required by the United States government for visa applications of the type they were seeking.  On the basis of the Individual Defendants' representations, the United States Embassy issued Plaintiff a visa authorizing her to work as a live-in domestic worker for the Individual Defendants.

15.     Upon information and belief, the Individual Defendants never intended to carry out the contractual representations made to Plaintiff and the United States government.

16.     On or about September 29, 2005, Plaintiff traveled to Washington, D.C. with agents of the Individual Defendants.  These agents had Plaintiff's passport and visa and, upon their arrival in the United States, provided the passport and visa to Defendant Al Naser.

17.     On the way from the airport to the Individual Defendants' home in Bethesda, Maryland, Defendant Al Naser reiterated that Plaintiff's job would involve only house-cleaning and Plaintiff would be paid $1150 U.S. Dollars a month.

- 5 -

**(Forced Labor and Exploitation In the United States)**

18.     Notwithstanding Al Naser's renewed promise and the terms of Plaintiff's contract, the Individual Defendants forced Plaintiff to perform long hours of back-breaking work virtually every waking hour of the day for negligible pay.

19.     The Individual Defendants required Plaintiff to work sixteen to eighteen hours per day, seven days per week.  Every single day of the week, the Individual Defendants required Plaintiff to begin work around 6:00 am to 6:30 am and work continuously until 11:30 pm or later.

20.     Defendant Al Najadi determined, monitored and regulated Plaintiff's daily work schedule and chores.  As dictated by Defendant Al Najadi, Plaintiff was responsible for doing the laundry and ironing, cleaning the home, cooking for the family, and cooking for and serving frequent guests.  Plaintiff was frequently required to wash clothing and other laundry by hand.

21.     The Individual Defendants forced Plaintiff to clean using harsh chemicals but refused to provide or allow Plaintiff to use gloves.  As a result, the skin on Plaintiff's hands became dry and cracked.  The Individual Defendants refused to provide Plaintiff with lotion to treat her dry, cracked hands.

22.     The Individual Defendants compelled Plaintiff's work through physical abuse and psychological abuse, and repeated threats.  They deprived Plaintiff of her passport and visa, which Defendant Al Naser had confiscated shortly after her arrival in the United States and refused to return to Plaintiff.

- 6 -

23.    The Individual Defendants subjected Plaintiff to a pattern of physical, psychological and sexual abuse.

24.    The Individual Defendants regularly physically abused Plaintiff. For example, the Individual Defendants repeatedly pushed, dragged, and yelled at Plaintiff. Defendant Al Najadi also twisted Plaintiff's ears, scratched Plaintiff's arms until they bled, and repeatedly kicked Plaintiff in the leg with her high heeled shoes. Defendant Al Najadi so injured Plaintiff's leg that Plaintiff was left walking with a limp and had to be taken to a doctor for treatment on multiple occasions.

25.    The Individual Defendants repeatedly demeaned and humiliated Plaintiff. For example, the Individual Defendants forced Plaintiff to eat her meals on the floor in the kitchen, even after Plaintiff's leg had been injured by Defendant Al Najadi. Plaintiff was forced to eat leftovers from the family's dinner, and sometimes the leftovers were not enough and Plaintiff went hungry.

26.    Plaintiff was in constant fear that the Individual Defendants would send her back to India. If the Individual Defendants were unhappy with Plaintiff's work sometimes they would call their family members in Kuwait and have the family members scold Plaintiff. For example, Defendant Al Najadi's sister would tell Plaintiff over the phone: "Do what they say. If they say do not go out, then do not go out. If you talk back, they will send you back to India."

27.    The Individual Defendants isolated Plaintiff from the outside world for the purpose of keeping her in a situation of forced labor and enslavement. Plaintiff was prohibited by the Individual Defendants from leaving the house alone, except to pick up the newspaper and

take the garbage outside. Plaintiff was not permitted to have friends, go outside, or even look out the window.

28.    The Individual Defendants told Plaintiff that video cameras in the house were watching her and that Plaintiff could not go outside or escape.

29.    The Individual Defendants required Plaintiff to open the door for guests when they were home but otherwise ordered Plaintiff to not open the door.

30.    On one occasion, in December 2005, the Individual Defendants returned to Kuwait for a month and left Plaintiff alone in the house. The Individual Defendants ordered Plaintiff not to leave the house, even for food, and told Plaintiff that they would call on the telephone to check on her, which they did. They also told Plaintiff that they had friends from Kuwait in the area that they could call and that "They'd know what to do." The Individual Defendants also arranged for someone to physically come to the house and check on Plaintiff once or twice a day. Plaintiff survived by rationing the little juice, rice, and other food in the house while the Individual Defendants were gone, but she nearly ran out of food by the time they returned. Plaintiff had wanted to leave the house but she was afraid.

31.    The abuse was so persistent and ever present that Plaintiff cried daily. When she was alone, she screamed and cried loudly.

32.    As if the physical and psychological abuse were not enough, Defendant Al Naser repeatedly subjected Plaintiff to sexual abuse as well.

33.    In approximately November 2005, on an evening when Defendant Al Najadi and their daughter were away from the house at a party, Defendant Al Naser entered Plaintiff's room while Plaintiff was arranging the clothes in her closet after finishing her assigned work.

- 8 -

Defendant Al Naser forcibly embraced and pinned Plaintiff, twisting her arm to control her, and then began kissing and fondling her. Plaintiff resisted, stating "I don't like that. Why are you doing this to me? You have a wife." Despite Plaintiff's resistance, Defendant Al Naser forced himself upon her and raped her.

34.     Thereafter, until Plaintiff managed to escape, Defendant Al Naser raped Plaintiff on many occasions when his wife was not in the home.

35.     Defendant Al Naser threatened to return Plaintiff to India if she refused his sexual advances.

36.     Plaintiff lived in constant fear of being raped, knowing that Defendant Al Naser might rape her at any time when his wife was not present. This was yet another way for the Individual Defendants to keep control of Plaintiff.

### (Compensation)

37.     Not only did they subject Plaintiff to repeated abuses, the Individual Defendants paid Plaintiff virtually nothing. Not only did they refuse to compensate her for all of the additional hours she worked and the additional duties, but they refused to even pay her anything approaching the wages to which she was entitled under the employment contract.

38.     For the first month, the Individual Defendants paid Plaintiff a sum of $160.00. The second month, they paid her $120.00. The third month, they paid her $200.00. However, after the third month, the Individual Defendants ceased to pay Plaintiff at all. Defendant Al Naser told Plaintiff that she should take what they gave her or otherwise they would send her back to India. Although Plaintiff raised the issue of her salary with Defendant Al Naser on several occasions, each time he threatened to send her back to India.

39.     Sometime later, Defendant Al Naser coerced Plaintiff to give him her money to put in his bank account for safekeeping by threatening to have a seal put in Plaintiff's passport that allegedly would preclude Plaintiff from traveling to any other country. Defendant Al Naser refused to let Plaintiff open her own banking account. Plaintiff gave Defendant Al Naser her money including the wages she had been paid as well as the money she had brought with her from Kuwait. Thereafter, Defendant Al Naser refused to give Plaintiff any access to her own money.

### (Escape from Defendants)

40.     Plaintiff wanted desperately to escape her inhumane treatment but, just as the Individual Defendants had planned and intended, she feared so much for her safety that she could not attempt an escape on her own.

41.     Finally, on one occasion Plaintiff was taking out the garbage and met a housekeeper who worked in a house across the street. When Plaintiff explained to the housekeeper how bad her situation was the housekeeper agreed to put Plaintiff in touch with people who would help her escape.

42.     On May 5, 2006, representatives of Ayuda, Inc., along with the assistance of the police and an interpreter, escorted Plaintiff away from the home of the Individual Defendants.

**(Additional Facts Relating to Kuwait)**

43.     G-5 and A-3 visas are nonimmigrant diplomatic visas granted to the attendants and servants of representatives of foreign governments.  These visas are granted to enable representatives of foreign governments to perform their duties.

44.     Defendant Al Naser was granted diplomatic immunity as an agent of the Kuwaiti Government.  This immunity to civil and criminal jurisdiction led Defendant Al Naser to believe he could act with impunity which greatly facilitated his exploitation and abuse of Plaintiff.

45.     In a circular memorandum dated May 20, 1996, the United States Department of State notified all foreign states with a diplomatic presence in the United States, including Defendant Kuwait, that "the Department [was] concerned to learn of problems which continue to arise in the working relationships between some members of the diplomatic and consular community and their personal household employees," including "instances where wages have been withheld from personal domestics for undue periods, where the wages actually paid are substantially less than those stipulated at the time of employment, where passports have been withheld from the employee, where the actual number of working hours weekly is substantially more than those originally contemplated and with no additional pay, and where the employee has been forbidden from leaving the employer's premises even though off duty."

46.     Based upon these problems, the State Department further informed Defendant Kuwait that it should take affirmative steps to monitor its employees, including "review[ing] each employment contract...[and] keep[ing] a copy on file at the mission and ensure that mission members respect their obligations as employers."

47.     In the same May 20, 1996 letter concerning the treatment of domestic workers by diplomats, the State Department informed the Kuwaiti government that it would *"hold the Chief of Mission and the sending government responsible for the conduct of persons sent to the United States as diplomatic representatives or of others entitled to immunity"* (emphasis added).

48.     Upon information and belief, the Kuwait Mission failed to take affirmative steps to monitor its diplomats in the United States, as required by the 1996 U.S. State Department letter.

49.     On June 19, 2000, the Secretary of State sent a second letter to government Missions, including the Kuwait government, stating again the legal obligations of diplomats to their employee domestic workers.

50.     Upon information and belief, the Kuwaiti government expected that its senior diplomats in the United States, including Defendant Al Naser, would use the services of domestic servants.

51.     Upon information and belief, there exists a pattern of rape, physical assault, involuntary servitude, and mistreatment of South Asian domestic workers in Kuwait that takes place largely with impunity. Human Rights Watch, *Global Report on Women's Human Rights*, http://www.hrw.org/about/projects/womrep/.

52.     Moreover, though such abuses have been widely reported, the Kuwaiti government has displayed a pattern and practice of complacency by denying abused domestic workers justice under applicable criminal and civil laws, as well as explicitly excluding them from the protection of the host country's labor laws. Human Rights Watch, *Global Report on Women's Human Rights,* http://www.hrw.org/about/projects/womrep/.

53.    As just one example of such complacency, despite a direct linkage between passport deprivation and the illegal restriction of the freedom of its holder, the Kuwaiti Ministry of Interior's then director of police investigations, Brigadier al-Muhaini, stated in 1992 that he was "not concerned with the passports, as a matter of fact. If an employer keeps the passport, it is only so the employee won't lose it, not to keep her in custody. It is just as we treat our children at home – it's the same thing with the maids." Human Rights Watch, *Global Report on Women's Human Rights,* http://www.hrw.org/about/projects/womrep/.

54.    The Human Rights Watch report "Global Report on Women's Human Rights" states that the Kuwaiti abuse of South Asian domestic workers commonly includes sexual and physical assaults, debt bondage, passport deprivation, and confinement, all of which create conditions of near total isolation that promote further abuse. In addition, the domestic workers' exclusion from the labor laws paves the way for this isolation and denies them even minimal protection against unfair practices.

55.    The United States Department of State has labeled the "physical or sexual abuse of foreign women working as domestic servants" in Kuwait as "a pervasive problem," noting "employers physically abused foreign women working as domestic servants, and, despite economic and social difficulties for a domestic servant who lodged a complaint, there were continuing reports of the rape of such women by male employers." Bureau of Democracy, Human Rights and Labor, U.S. Department of State, *Kuwait: Country Reports on Human Rights Practices - 2004, http://www.state.gov/g/drl/rlse/hrrpt/2004/41725.htm*.

56.    In addition, the State Department has found that South Asian workers in Kuwait, especially, "live much like indentured servants. They frequently face poor working conditions

and some physical abuse." The government of Kuwait has furthered such practice through

specifically excluding domestic servants from the private sector Labor Law and treating domestic

servants who run away from their employers as criminals under Kuwaiti law. Bureau of

Democracy, Human Rights and Labor, U.S. Department of State, *Kuwait: Country Reports on*

*Human Rights Practices* - 1999, http://www.state.gov/g/drl/rlse/hrrpt/1999/419.htm.

57.     The Kuwaiti government knew or should have known about Defendants Al Naser

and Al Najadi's specific abuse of Plaintiff but did not take steps to stop the abuse.

58.     Upon information and belief, Kuwait has continued its policy and practice of

failing to monitor its diplomats abroad even after it became aware of the facts giving rise to this

Complaint, and the abuse of domestic workers by Kuwaiti diplomats remains widespread.

**FIRST CAUSE OF ACTION**
**(Forced Labor Violation of Trafficking Victims Protection Reauthorization Act)**
**(Against All Defendants)**

59.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the

foregoing paragraphs as though fully set forth herein.

60.     The forced-labor provision of the Trafficking Victims Protection Reauthorization

Act ("TVPRA"), 18 U.S.C. § 1589, provides in part: "Whoever knowingly provides or obtains

the labor or services of a person -- (1) by threats of serious harm to, or physical restraint against,

that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the

person to believe that, if the person did not perform such labor or services, that person or another

person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened

abuse of law or the legal process, shall be fined under this title or imprisoned not more than 20

years, or both."

- 14 -

61.    As described above, the Individual Defendants knowingly obtained Plaintiff's labor and services through physical, mental and sexual abuse and repeated threats of serious harm or physical restraint.

62.    Because of the Individual Defendants' conduct, Plaintiff lived in fear and believed that she would suffer even more serious harm if she did not comply with the Individual Defendants' demands.

63.    The Individual Defendants further repeatedly threatened Plaintiff that they would send her back to India and they withheld her passport and visa.

64.    Defendant Kuwait knowingly played a significant role in and practically and materially assisted the Individual Defendants in subjecting Plaintiff to conditions of forced labor.

65.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait. Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties. The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

66.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

67.    Under 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorney fees and costs for Defendants' wrongful conduct.

## SECOND CAUSE OF ACTION
### (Trafficking Violation of Trafficking Victims Protection Reauthorization Act)
### (Against All Defendants)

68.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

69.    The trafficking-into-servitude provision of the TVPRA, 18 U.S.C. § 1590, provides in part: "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both."

70.    The Individual Defendants knowingly recruited, harbored, and transported the Plaintiff to the United States in order to obtain her labor and services.

71.    The Individual Defendants knowingly obtained Plaintiff's labor and services by threats of serious harm or physical restraint.

72.    The Individual Defendants knowingly obtained Plaintiff's labor and services by a scheme, plan, or pattern of behavior intended to cause the Plaintiff to believe that, if she did not provide her labor and/or services, she would suffer serious harm and physical restraint.

73.    The Individual Defendants knowingly obtained Plaintiff's labor and services by the threatened abuse of the law or legal process.

74.    Defendant Kuwait knowingly played a significant role in and practically and materially assisted the Individual Defendants' trafficking of Plaintiff.

75.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and

Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties. The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

76.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

77.    Under 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorney fees and costs for Defendants' wrongful conduct.

### THIRD CAUSE OF ACTION
**(Involuntary Servitude Under the Thirteenth Amendment of the United States Constitution)**
**(Against All Defendants)**

78.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

79.    The Thirteenth Amendment of the United States Constitution prohibits involuntary servitude in private conduct: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Thirteenth Amendment is enforceable under 18 U.S.C. § 1584.

80.    The Individual Defendants knowingly forced Plaintiff to work through threats of physical force and legal coercion. The Individual Defendants forced Plaintiff to work for them under the threat of physical harm and through legal coercion manifested in the confiscation of her

passport and threats of harm and legal coercion that would result should the Plaintiff leave the Individual Defendants' residence.

81.    Upon information and belief, Defendant Kuwait knowingly played a significant role in and practically and materially assisted the Individual Defendants in subjecting Plaintiff to conditions of involuntary servitude.

82.    Upon information and belief, at the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait. Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties. The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

83.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

84.    Under 18 U.S.C. § 1584, Plaintiff is entitled to recover damages and reasonable attorney fees and costs for Defendants' wrongful conduct.

## FOURTH CAUSE OF ACTION
### (Fair Labor Standards Act)
### (Against Defendants Al Naser and Al Najadi)

85.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

86.    The Individual Defendants employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

87.    Under the FLSA, 29 U.S.C. §§ 201 *et seq.*, and United States Department of Labor regulations, Individual Defendants were obligated to pay Plaintiff at least the minimum wage of $5.15 for every hour in which the Plaintiff was not free to leave the Individual Defendants' premises.

88.    The Individual Defendants willfully refused to pay Plaintiff the minimum wages due, in violation of 29 U.S.C. §§ 206(a) and (f) and Department of Labor regulations.

89.    The Individual Defendants have specific employment record-keeping obligations under the FLSA, 29 U.S.C. § 211(c), including making, keeping, and preserving records of their employee and of the wages, hours, and other conditions and practices of employment maintained by Defendants. The Individual Defendants were obligated to accurately record the actual number of hours that the employee worked. Plaintiff is informed and believes and on that basis alleges that the Individual Defendants have failed to keep adequate employment records and have not properly or adequately recorded the hours worked by Plaintiff during her employment.

90.    The Individual Defendants knew, should have known, or showed reckless disregard for the FLSA's provisions applicable to Plaintiff and willfully, intentionally, and without good faith violated these laws. As a result of the Individual Defendants' willful

violations, Plaintiff is entitled to receive liquidated damages in an additional amount above the wages already due her.

91.    As a result of the Individual Defendants' wrongful conduct, Plaintiff has suffered damages.

92.    Under the FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to recover all unpaid wages, an additional equal amount as liquidated damages, and reasonable attorney fees and costs in amounts to be proven at trial.

### FIFTH CAUSE OF ACTION
#### (Violation of Maryland Wage Payment and Collection Law)
#### (Against Defendants Al Naser and Al Najadi)

93.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

94.    In violation of Section 502 and Section 505 of the Maryland Wage Payment and Collection Law, the Individual Defendants have failed and refused to pay the wages due Plaintiff.

95.    The Individual Defendants' failure to pay Plaintiff's wages is not the result of a *bona fide* dispute.

96.    Under MD Code § 3-507.1, Plaintiff is entitled to recover all unpaid wages, an additional amount up to three times the unpaid wages as statutory damages, and reasonable attorney fees and costs in amounts to be proven at trial.

### SIXTH CAUSE OF ACTION
#### (Violation of Maryland Wage and Hour Law)
#### (Against Defendants Al Naser and Al Najadi)

97.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

98.    During the time relevant to this matter, the Individual Defendants were obligated to pay Plaintiff at least $5.15 per hour for each hour that she worked on their behalf and at least $7.73 for each hour that she worked on their behalf in excess of 40 in any given workweek.

99.    By the acts described in this Complaint and in violation of MD Code §§ 3-413, 3-415, and 3-420, the Individual Defendants failed to pay the minimum wage and overtime compensation to Plaintiff.

100.    The Individual Defendants' failure to pay Plaintiff the minimum wage and overtime compensation is willful and unreasonable.

101.    Plaintiff is entitled to recover all unpaid wages, including overtime wages, an additional amount up to three times the unpaid wages as statutory damages, and reasonable attorney fees and costs in amounts to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### (Against Defendants Al Naser and Al Najadi)

102.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

103.    Prior to her employment, Plaintiff and the Individual Defendants entered into a contract providing, *inter alia*, that Plaintiff would work for the Individual Defendants as a domestic worker in their home in the United States for $1,150 U.S. Dollars per month.  The contract also provided that Plaintiff would work only eight hours a day.

104.    Upon information and belief, the contract was in written form.

105.    Plaintiff fully performed under the contract by working as a domestic worker in the household of the Individual Defendants.

106.    The Individual Defendants breached the contract by failing to pay Plaintiff for all of the work she performed and by forcing Plaintiff to work more than eight hours per day, seven days per week.

107.    As a result of the Individual Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

108.    Plaintiff is entitled to recover damages and reasonable attorney fees and costs for Individual Defendants' wrongful conduct.

### EIGHTH CAUSE OF ACTION
### (Quantum Meruit)
### (Against Defendants Al Naser and Al Najadi)

109.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

110.    Plaintiff conferred significant benefits upon the Individual Defendants by performing the above-mentioned labor for them.

111.    The Individual Defendants have not paid an appropriate amount to Plaintiff for her services.

112.    The Individual Defendants are liable under quantum meruit for the services provided by Plaintiff.

113.    As a result of the Individual Defendants' conduct, Plaintiff has suffered damages.

114.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney fees and the cost of this action.

### NINTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against Defendants Al Naser and Al Najadi)

115.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

116.    The Individual Defendants have been unjustly enriched because they failed to pay Plaintiff the value of her labor.

117.    As a result of the Individual Defendants' conduct, Plaintiff has suffered damages.

118.    It would be inequitable for the Individual Defendants to be permitted to retain such benefits without paying Plaintiff the value of the benefits conferred.

119.    Plaintiff is entitled to restitution and judgment against the Individual Defendants in an amount to be proven at trial, including attorney fees and the cost of this action.

### TENTH CAUSE OF ACTION
### (Fraud and Constructive Fraud)
### (Against All Defendants)

120.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

121.    The Individual Defendants intentionally, knowingly, negligently or innocently misrepresented to Plaintiff the condition of Plaintiff's employment in the United States in order to induce her to come to the United States.

122.    The Individual Defendants deceived Plaintiff with the above-mentioned misrepresentations, including the promise of specified wages and working conditions, in order to entice Plaintiff to come to the United States and to force the Plaintiff to work as a domestic servant in their household.

- 23 -

123.     The Individual Defendants induced Plaintiff to come to the United States knowing and intending that their misrepresentations would induce Plaintiff to travel to the United States in order to receive the promised employment.

124.     Plaintiff relied on the Individual Defendants' misrepresentations and promises to her detriment and as a result was forced to work as a domestic servant for the Individual Defendants, thereby enduring the physical and psychological abuse that accompanied the employment.

125.     At no time did the Individual Defendants intend to fulfill the promises made to Plaintiff.

126.     Defendant Kuwait knowingly played a significant role in and practically and materially assisted the Individual Defendants in subjecting Plaintiff to fraud.

127.     At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties.  The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

128.     As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

129.    Plaintiff is entitled to recover damages and reasonable attorney fees and costs for Defendants' wrongful conduct.

## ELEVENTH CAUSE OF ACTION
### (False Imprisonment)
### (Against All Defendants)

130.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

131.    The Individual Defendants knowingly and intentionally restrained Plaintiff through threats and coercion so as to deprive Plaintiff of her liberty and force Plaintiff to continue laboring for them.

132.    Plaintiff reasonably believed that she was confined within the Individual Defendants' home as a result of the Individual Defendants' coercion, use of force, and threats of force.

133.    The Individual Defendants committed these acts maliciously, with the wrongful intention of causing harm to Plaintiff and in conscious disregard of her rights.

134.    Defendant Kuwait knowingly played a significant role in and practically and materially assisted the Individual Defendants in subjecting Plaintiff to false imprisonment.

135.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties.  The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests.

- 25 -

Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

136.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

137.    Plaintiff is entitled to recover damages (compensatory and punitive), reasonable attorney fees, and costs for Defendants' wrongful conduct.

## TWELFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Against All Defendants)

138.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

139.    The Individual Defendants acted with an intent to cause Plaintiff emotional distress and/or a reckless disregard for the high probability that emotional distress would occur by, among other things, refusing Plaintiff contact with the world outside the Individual Defendants' home, telling Plaintiff that she would be harmed if she left the home, and subjecting her to abhorrent working conditions.

140.    The Individual Defendants' conduct was extreme and outrageous in nature and intolerable in a civilized society.

141.    As a result of the Individual Defendants' conduct, Plaintiff has suffered and continues to suffer severe mental distress, emotional injuries, and economic loss.

142.    The Individual Defendants committed these acts maliciously and oppressively, with the wrongful intention of causing harm to Plaintiff, with the motive amounting to malice and in conscious disregard of Plaintiff's rights.

143.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties.  The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests.  Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

144.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

145.    Plaintiff is entitled to recover damages (compensatory and punitive), reasonable attorney fees, and costs for Defendants' wrongful conduct.

### THIRTEENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (Against All Defendants)

146.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

147.    The Individual Defendants negligently engaged in outrageous conduct toward Plaintiff and caused Plaintiff to suffer severe emotional distress.

148.    The Individual Defendants owed a duty to Plaintiff because it was foreseeable that forcing a domestic servant to work eighteen or more hours per day, with minimal to no pay, isolated from the outside world, and subjected to physical harm and threats of physical harm and legal abuse, would cause Plaintiff to suffer severe emotional distress.

- 27 -

149.    The Individual Defendants breached their duty to the Plaintiff by negligently engaging in the conduct described therein.

150.    As a result of the Individual Defendants' conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, and emotional injuries, as a direct and natural result of which Plaintiff has suffered physical and psychological injuries.

151.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties.  The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

152.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

153.    Plaintiff is entitled to recover damages (compensatory and punitive), reasonable attorney fees, and costs for Defendants' wrongful conduct.

### FOURTEENTH CAUSE OF ACTION
### (Battery)
### (Against All Defendants)

154.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

155.    The Individual Defendants engaged in continuous harmful and/or offensive physical contact with Plaintiff, including hitting, slapping, and stomping on Plaintiff on multiple occasions.

156.    Defendant Al Naser engaged in repeated offensive sexual contact with Plaintiff.

157.    At no time did Plaintiff consent to the above harmful and/or offensive physical contact by the Individual Defendants.

158.    The Individual Defendants' physical contact with Plaintiff was inexcusable and unjustified.

159.    As a result of the Individual Defendants' physical contact with Plaintiff, Plaintiff has endured continuing pain and suffering, in addition to severe emotional distress and loss of income.

160.    At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait.  Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties.  The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

161.    As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

162.    Plaintiff is entitled to recover damages (compensatory and punitive), reasonable attorney fees, and costs for Defendants' wrongful conduct.

## FIFTEENTH CAUSE OF ACTION
### (Civil Conspiracy)
### (Against All Defendants)

163.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

164.    Defendants agreed to engage in the acts detailed above to accomplish an unlawful purpose and/or accomplish acts by unlawful means.

165.    Through their concerted action, Defendants assisted one another in the execution of those acts that resulted in the unlawful treatment of Plaintiff.

166.    As a result of Defendants' agreement to engage in the unlawful acts described above, Plaintiff has suffered and continues to suffer severe mental distress, emotional injuries, and economic loss.

167.    Plaintiff is entitled to recover damages, reasonable attorney fees, and costs for Defendants' wrongful conduct.

## SIXTEENTH CAUSE OF ACTION
### (Conversion)
### (Against All Defendants)

168.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

169.    Plaintiff owned a passport that the Individual Defendants either took or caused to be taken from her in connection with her trip to the United States. The Individual Defendants knowingly and wrongfully refused to return her passport.

170.   The Individual Defendants took Plaintiff's passport or caused it to be taken and then refused to return her passport with the wrongful intention of injuring Plaintiff with an improper motive amounting to malice, in conscious disregard of Plaintiff's rights. The Individual Defendants' actions were willful, wanton, malicious, and oppressive.

171.   Defendant Al Naser took approximately $520 US dollars from Plaintiff to ostensibly place in a bank account for safekeeping but then refused to return the money.

172.   At the time the Individual Defendants engaged in the conduct described herein, Defendant Al Naser was employed by Defendant Kuwait. Defendant Kuwait authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States, and Defendant Al Naser approved of Defendant Al Najadi's day-to-day management of her household duties. The exploitation of Plaintiff occurred in the ordinary course of the Individual Defendants' supervision of Plaintiff and with the intent of furthering Kuwait's interests. Defendant Kuwait is therefore vicariously liable for the Individual Defendants' conduct under the doctrine of respondeat superior.

173.   As a result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

174.   Plaintiff is entitled to recover damages (compensatory and punitive), reasonable attorney fees, and costs for Defendants' wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered for Plaintiff, and that Plaintiff be granted the following relief:

(i)   Compensatory damages;

(ii)      Unpaid wages, including minimum and overtime wages, in an amount to be proven at

trial;

(iii)     Statutory penalties and liquidated damages according to proof at the time of trial;

(iv)     Punitive and exemplary damages in an amount according to proof at the time of trial;

(v)      Pre- and post-judgment interest;

(vi)     Reasonable attorney fees and costs;

(vii)     Such other and further relief as the nature of the case may admit or require and as may

be just and equitable.


Dated:  July 22, 2008                    Respectfully submitted,

*Michael I. Coe*

Shari Ross Lahlou (D.C. Bar No. 476630)
Michael I. Coe (D.C. Bar No. 479231)
Bethany M. Wimsatt (D.C. Bar No. 491008)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Anya Sykes (D.C. Bar No. 399291)
AYUDA
1707 Kalorama Road, N.W.
Washington, D.C. 20009
(202) 387-4848

Counsel for Plaintiff

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Regina M. Leo

## DEFENDANTS

Ahmed S. J. Al Naser, Muna S. M. N. Al Najadi, and State of Kuwait

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ Virginia _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Crowell & Moring LLP, 1001 Pennsylvania Ave., NW
Washington, DC 20004, (202) 624-2500

Ayuda, 1707 Kalorama Road, N.W., Washington, DC 20009, (202) 387-4848

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/ Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ **C. Administrative Agency Review**
  - ☐ 151 Medicare Act

  Social Security:
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)

  Other Statutes
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

---

- ◉ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

TVPRA, 18 U.S.C. § 1589 et seq.; FLSA, 29 U.S.C. § 201 et seq.; 13th Am. to the U.S. Constitution: human trafficking, forced labor, labor law violations

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 7/22/2008   SIGNATURE OF ATTORNEY OF RECORD   *Michael L. C*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.