**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **REGINA M. LEO,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No.: 08-CV-01263 (RMU)** |
| | ) |
| **AHMED S.J. AL NASER, MUNA S.M.N.** | ) |
| **AL NAJADI, and STATE OF KUWAIT,** | ) |
| | ) |
|       **Defendants.** | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF STATE OF KUWAIT'S MOTION TO DISMISS**

**Table of Contents**

INTRODUCTION AND SUMMARY .................................................................................... 1

ARGUMENT .......................................................................................................................... 1

    I.    THE COURT LACKS SUBJECT MATTER AND PERSONAL JURISDICTION OVER KUWAIT BECAUSE KUWAIT IS IMMUNE FROM SUIT UNDER FSIA ................................................................................... 1

        A.    Leo's Principal Target is the Individual Defendants, not Kuwait .............. 2

        B.    No Exception to FSIA Immunity for Kuwait Applies ................................ 3

            1.    FSIA's Commercial Activity Exception Does Not Apply ............... 3

            2.    FSIA's Non-Commercial Tort Exception Does Not Apply ............. 6

                a.    The State of Kuwait is not vicariously liable for the Individual Defendants' alleged tortious acts ....................... 7

                b.    The tortious acts that Leo alleges Kuwait engaged in directly are discretionary functions that do not give rise to jurisdiction ................................................................... 10

                c.    The non-commercial tort exception does not apply to any claims against Kuwait that are grounded in allegations of deception and misrepresentation ................ 13

CONCLUSION ..................................................................................................................... 14

**INTRODUCTION AND SUMMARY**

The Court should dismiss Regina M. Leo's claims against the State of Kuwait because Kuwait is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1604, 1605.[1]  Leo, a citizen of India, alleges that "her former employers," Ahmed S.J. Al Naser, a Kuwaiti diplomat previously stationed in Washington, D.C., and Muna S.M.N. Al Najadi, his wife (collectively, the "Individual Defendants"), mistreated and abused her while she worked as a housekeeper in their Maryland home.  Although Leo alleges that Kuwait "assisted" and "did not stop" the Individual Defendants' alleged misconduct, and that Kuwait itself engaged in wrongful conduct, none of Leo's claims against Kuwait falls within the "commercial activity" or "non-commercial tort" exceptions to FSIA immunity, and none of them can be ascribed to Kuwait under the doctrine of *respondeat superior*.  Because FSIA provides the sole avenue by which this Court can have subject matter and personal jurisdiction over Kuwait, the Court is bound to dismiss Leo's claims against Kuwait under Fed. R. Civ. P. 12(b)(1), (2).

**ARGUMENT**

**I.    THE COURT LACKS SUBJECT MATTER AND PERSONAL JURISDICTION OVER KUWAIT BECAUSE KUWAIT IS IMMUNE FROM SUIT UNDER FSIA**

The Supreme Court, the D.C. Circuit, and this Court consistently have held that FSIA provides the only path to subject matter and personal jurisdiction over foreign states in U.S. courts.  *Permanent Mission of India v. City of New York*, 127 S. Ct. 2352, 2355 (2007); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *Belhas v. Ya'alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008); *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 31 (D.C. Cir. 2000); *Guzel v. State of Kuwait*, 818 F. Supp. 6, 9 (D.D.C. 1993).  The default rule under FSIA is that, subject to international agreements to which the United States was a party

---

[1] To date, Kuwait is the only defendant upon whom Leo has effected service of process.

1

when FSIA was enacted, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604.  Thus, "[u]nder the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India, id*.  And "if none of the exceptions to sovereign immunity set forth in the Act applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n. 5 (1983).  This Court lacks subject matter and personal jurisdiction over Leo's claims against Kuwait because none of the narrow statutory exceptions to FSIA immunity applies to the acts Leo alleges.

      A.     **Leo's Principal Target is the Individual Defendants, not Kuwait**

The overwhelming majority of Leo's factual allegations and causes of action are directed against the Individual Defendants, who she describes as "her former employers" (Compl. ¶ 2), not Kuwait.  Thus, Leo devotes the first 32 paragraphs of her "general allegations" to a description of her alleged employment abuse by the Individual Defendants (Compl. ¶¶ 10-42).  In contrast, Leo refers to Kuwait only in the succeeding 15 paragraphs, and only to allege that Kuwait was generally aware that its diplomats abused domestic workers (*id*. ¶¶ 45-56, 58) and that it "knew or should have known about Defendants Al Naser and Al Najadi's specific abuse of Plaintiff but did not take steps to stop the abuse" (*Id*. ¶ 57).

Leo alleges three labor-related causes of action against all the defendants – forced labor, recruitment by threat, and involuntary servitude (Compl. ¶¶ 59-84) –  and nine tort-related causes of action against all of them – fraud and constructive fraud, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, civil conspiracy, and conversion (*Id*. ¶¶ 120-174).  However, with respect to each of these causes of

action Leo alleges that the Individual Defendants were the primary actors, while Kuwait "played a significant role in and practically and materially assisted the Individual Defendants" in or "authorized" their alleged misconduct (*Id.* ¶¶ 63, 74, 81, 126, 134, 143, 151, 160, 165, 172).

### B. No Exception to FSIA Immunity for Kuwait Applies

There are only two exceptions to FSIA immunity for Kuwait that, based on the phrasing of the allegations in Leo's complaint, even arguably could allow this Court to exercise personal and subject matter jurisdiction over Kuwait: the "commercial activity" exception (§ 1605(a)(2)), and the "non-commercial tort" exception (§ 1605(a)(5)). Neither, however, applies.

#### 1. FSIA's Commercial Activity Exception Does Not Apply

The "commercial activity" exception to FSIA, which is the "most significant of the FSIA's exceptions," *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992), does not apply here because Kuwait did not carry on any commercial activity that forms the basis for this suit. FSIA defines "commercial activity" as "either a regular course of commercial conduct or as particular commercial transaction or act," providing further that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The Supreme Court has explained that a foreign state engages in commercial activity when it exercises powers that also can be exercised by private citizens, as distinct from those powers that can be exercised only by sovereigns. *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (a "foreign state engages in commercial activity … only where it acts in the manner of a private player within the market") (quotations omitted). Kuwait has not engaged in either a "regular course of commercial conduct" or "a particular commercial transaction or act" with respect to Leo.

First, Leo alleges in her complaint that she was hired in Kuwait by the Individual Defendants to work for them as a housekeeper in the United States, and that every aspect of her

employment – including obtaining her visa, accompanying her on her travel to the United States, setting her wages, defining her work responsibilities, and all the misconduct and abuse – was controlled by the Individual Defendants (Compl. ¶¶ 12-42).[2] Leo does not allege that Kuwait was directly involved in any of these activities.  Therefore, to the extent that the employment of a housekeeper may be deemed to be a "regular course of commercial conduct" or "a particular commercial transaction or act," the act and manner of employing Leo as a housekeeper was not the commercial conduct or commercial transaction or act of Kuwait, but the commercial conduct or commercial transaction or act of the Individual Defendants.  Leo's vague allegations that, in unspecified ways, Kuwait "assisted" or "authorized" the Individual Defendants' alleged misconduct and abuse are insufficient to establish that Kuwait engaged in any commercial activity with respect to Leo.

     Just a few months ago, in *Swarna v. Al-Awadi*, 607 F. Supp. 2d 509 (S.D.N.Y. 2009), the district court held that claims by a domestic worker of mistreatment and abuse by a Kuwaiti diplomat and his wife did not come within the commercial activity exception to FSIA and could not be brought against Kuwait.  The court observed that, according to plaintiff's complaint, the Kuwaiti diplomat and his wife, not Kuwait, offered plaintiff a job in their home in the United States, promised her benefits, and secured the visa necessary for her to work for them.  *Id*. at 525.  Therefore, the court concluded that "the commercial activity exception does not apply and Kuwait is immune from plaintiff's labor law claims." *Id.*  The court added that plaintiff's allegations that Kuwait paid for all the expenses the individual defendants incurred in moving to and living in the United States, owned the home in the United States in which the individual

---

[2] *See, e.g.,* Compl. ¶¶ 13 ("In August or September of 2005, Defendant Al Naser and his wife Defendant Al Najadi offered Plaintiff a job in the United States as their housekeeper.  The Individual Defendants promised Plaintiff she would be paid a salary of $1150 U.S. Dollars a month . . . Plaintiff accepted their offer and agreed to work for the Individual Defendants in the United States." ), 14 ("Individual Defendants (through an agent) sought a visa for Plaintiff at the United States Embassy.").

defendants lived, and reimbursed one of the individual defendants for some of plaintiff's medical and travel expenses, were the kinds of benefits a sovereign confers on its diplomats and "failed to establish that Kuwait's actions 'are the *type* of actions by which a private party engages in trade and traffic or commerce'" (quoting *Weltover*, 504 U.S. at 614).  *Id*.  Similarly, Leo has failed to establish in this case that Kuwait's actions constituted commercial activity and are excepted from FSIA immunity.

Although there is some case law suggesting that, where a foreign state *itself* hires personnel, that employment activity might fall within the commercial activity exception to FSIA, *see, e.g., Park v. Shin*, 313 F.3d 1138, 1144-45 (9th Cir. 2002), the D.C. Circuit has held that "the employment of personnel by a foreign state is not per se commercial activity under the FSIA."  *El-Hadad*, 216 F.3d at 31.  In any event, there simply is *no* case law holding or even suggesting that the commercial activity exception to FSIA applies when *an employee* of a foreign state – but not the state itself – employs a domestic worker.  As *Swarna* pointed out, "[t]he distinction is critical" between cases in which a foreign state itself hires a worker and acts as his or her employer, where the commercial activity exception to FSIA might apply, and those, such as here, where a diplomat employed by the foreign state hires the worker and acts as his or her employer, where the FSIA exception does not apply.  *Swarna*, 607 F. Supp. 2d at 524.

Second, Leo's allegations that Kuwait was aware that its diplomats mistreat and abuse domestic workers (Compl. ¶¶ 45, 49) and that it "has displayed a pattern and practice of complacency" toward the abuse of domestic workers and "furthered such practice" through its laws (*Id.* ¶¶ 52, 56), do not implicate the commercial activity exception to FSIA.  If anything, those allegations confirm that, to the extent Leo's employment may be considered a commercial activity, it was an activity in which the Individual Defendants, not Kuwait, engaged.  Moreover,

5

Kuwait's alleged adoption of policies and laws that supposedly display complacency toward abusive conduct by its diplomats is precisely the kind of exercise of a "power[ ] peculiar to sovereigns," as distinct from a power that can be "exercised by private citizens," that is immunized from suit by FSIA. *Saudi Arabia*, 507 U.S. at 360. *See also Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 167 (D.C. Cir. 1994) (the motives of a foreign state in allowing a particular activity "must be disregarded" when determining the activity's "character and type").

### 2.    FSIA's Non-Commercial Tort Exception Does Not Apply

The non-commercial tort exception to sovereign immunity also is inapplicable here. FSIA provides at 28 U.S.C. § 1605(a)(5) that immunity is not conferred where.

> money damages are sought against a foreign state for personal injury . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . . [but this exception does not apply to] any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused [or] any claim arising out of . . . misrepresentation [or] deceit.

Leo makes no specific allegation that Kuwait engaged directly in any mistreatment or abuse. Although Leo does allege that the Individual Defendants engaged directly in such tortious conduct against her, defendant Al Naser was not "acting within the scope of his office or employment" when he allegedly did, and his wife, defendant Al Najadi, was not employed by Kuwait at all. Therefore, the non-commercial tort exception does not apply to Leo's allegations of mistreatment and abuse. To the extent Leo alleges other acts or omissions by Kuwait itself, the non-commercial tort exception does not apply to them because they are either discretionary in nature or arise out of claims of misrepresentation or deceit.

### a. The State of Kuwait is not vicariously liable for the Individual Defendants' alleged tortious acts

Leo alleges in her complaint that, under the doctrine of *respondeat superior*, Kuwait is vicariously liable for her alleged mistreatment and abuse by the Individual Defendants (Compl. ¶¶ 65, 75, 82, 127, 135, 143, 151, 160, 172). However, claims of such tortious conduct can be brought against Kuwait only if the non-commercial tort exception in 28 U.S.C. § 1605(a)(5) applies. As this Court explained in *Skeen v. Federative Republic of Brazil*, 566 F. Supp. 1414, 1417 (D.D.C. 1983), to invoke the non-commercial tort exception to FSIA immunity a "plaintiff must demonstrate that [the foreign state employee's] actions were 'within the scope of his office or employment.'" And to determine whether the acts of the foreign state's employee should be considered within the scope of his office or employment, "the Court must look to the applicable state law defining that concept." *Id*.

Looking to the District of Columbia law of *respondeat superior*, this Court concluded in *Skeen* that Brazil was immune from suit under FSIA's non-commercial tort exception on a claim that its ambassador's grandson committed an assault and battery against plaintiff. 566 F. Supp. at 1418-19. The Court explained that, under D.C. law, an employer may not be held liable under a *respondeat superior* theory where the acts committed by the employee were "beyond the types of activities that the employer could foresee might be committed as a result of the employment," or "done for purely personal reasons, and not in furtherance of the employer's business." *Id.* at 1418. Although the Court said it was "doubtful" the ambassador's grandson could be considered an employee or agent of Brazil because there was no precedent for such a proposition and there was a "strong argument" that the extension of diplomatic immunity to the family members of a diplomat "is a courtesy accorded to the diplomat rather than a recognition of any official status of the family members themselves," the Court concluded that, even if he were, Brazil was immune

7

from suit because the alleged assault "in no way furthered defendant's interests; nor could defendant have reasonably foreseen that [the family member's] actions might have occurred as a natural result of his employment." *Id.* at 1417.[3]

Similarly, in *Guzel v. State of Kuwait*, 818 F. Supp. 6 (D.D.C. 1993) this Court held that Kuwait could not be held vicariously liable pursuant to the non-commercial tort exception for a sexual assault and battery allegedly committed by an employee of Kuwait against a third party. As in *Skeen*, the Court noted that D.C. law governed the question of whether the employee was "acting within the scope of his employment" when he committed the acts in question, which meant that plaintiff had to show that the acts were "actuated, at least in part, by a purpose to further the employer's business" and also that they were "not unexpected in view of the employee's duties." 818 F. Supp. at 10 (citing *Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C. 1986)). The Court held that, as a matter of law, plaintiff could not make this showing because "it is difficult to comprehend how any sexual assault could be committed for a purpose other than that of the individual" and "regardless of [the employee's] official title or responsibilities in the Ministry of Defense, the assault he is alleged to have committed could not have been committed even partially in furtherance of any duties he owed Kuwait." *Id*. The Court noted that it was "difficult to imagine any employer more likely to be harmed by a sexual assault committed by its employee while in a foreign country than a diplomatic entity." *Id*.

The Court also rejected the assertion that the employee's alleged conduct was "not unexpected," contrasting that conduct with situations where an assault or similar tortious conduct was committed as an outgrowth of a dispute related to the employee's job. 818 F. Supp. at 11.

---

[3] The Court ruled that, although the issue as to whether a tort was committed within the scope of the employee's employment is generally a question of fact for the jury, when all reasonable triers of fact must conclude that the employee's act was independent of the employer's business and solely for the employee's personal benefit, the issue becomes a question of law. 566 F. Supp. at 1418.

8

The Court noted that "to conclude otherwise would likely eviscerate the current [respondeat superior] test." *Id*. at 12.

Most recently, the district court in *Swarna,* applying nearly identical New York law, held that Kuwait could not be liable under the doctrine of *respondeat superior* for the tortious mistreatment and abuse committed against a domestic worker by a Kuwaiti diplomat and his wife because such conduct was not within the scope of the diplomat's employment. The court said: "[T]here is no basis for holding that Mr. Al-Awadi's alleged commission of 'slavery and slavery-like practices including forced labor, involuntary servitude, and sexual slavery' … were in any way related to the furtherance of Kuwait's purposes in the United States." 607 F. Supp. 2d at 526. "Rather, such acts, by their nature, arise from personal motives." *Id.*

This case, in which Maryland law applies to the determination of scope of employment, is indistinguishable from *Skeen*, *Guzel*, and *Swarna* in all relevant respects.[4] As in those cases, Leo is attempting to hold Kuwait vicariously liable for tortious conduct allegedly committed by the Individual Defendants. As in those cases, the alleged tortious conduct cannot be considered to further Kuwait's purposes in the United States – indeed, as this Court noted in *Guzel*, such universally condemned conduct could only harm Kuwait's diplomatic efforts and create problems for it in the United States. Because defendant Al Naser's alleged tortious conduct was not within the scope of his office or employment, and because his wife, defendant Al Najadi, was

---

[4] Maryland *respondeat superior* law, like New York law, is also nearly identical to D.C. law. *See, e.g., Sawyer v. Humphries*, 322 Md. 247, 256-57 (Md. 1991) ("in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business . . . the employee's actions are outside the scope of his employment.")

9

not employed by Kuwait and, therefore, was not an officer or agent of Kuwait, Leo's claims of tortious conduct against Kuwait do not come within FSIA's non-commercial tort exception.[5]

Leo's allegations that there is a pattern of mistreatment of domestic workers by Kuwaiti diplomats of which Kuwait was aware, and that Kuwait adopted a complacent attitude toward such mistreatment (Compl. ¶¶ 45-58), does not render such alleged mistreatment foreseeable and in furtherance of Kuwait's interests. As the court pointed out when it denied reconsideration in *Swarna*, the allegation that the mistreatment of domestic workers is widespread among Kuwaiti diplomats "does not fairly permit the inference that [the diplomat's] various acts of assault and abuse furthered Kuwait's official purposes in the United States." *Swarna v. Al-Awadi,* No. 06 Civ. 4880 (PKC), 2009 WL 1562811 at *3 (S.D.N.Y May 9, 2009). Furthermore, a foreign state cannot foresee that a specific employee – let alone the wife of an employee – is going to abuse or mistreat a domestic worker, any more than it can foresee that an employee or the family member of an employee is going to attack someone in a nightclub or assault someone in a hotel room.

In sum, the Individual Defendants' alleged tortious acts were not committed within the scope of office or employment by Kuwait. Therefore, Leo's allegations of tortious conduct against Kuwait must be dismissed because they do not fall within FSIA's non-commercial tort exception to sovereign immunity.

>   **b.    The tortious acts that Leo alleges Kuwait engaged in directly are discretionary functions that do not give rise to jurisdiction**

Because the only acts underlying Leo's tort claims that Leo alleges Kuwait engaged in directly (as opposed to acts allegedly committed by the Individual Defendants) are discretionary

---

[5] As this Court held in *Skeen*, 566 F. Supp. at 1417, even if defendant Al Najadi were deemed to be an employee or agent of Kuwait, the non-commercial tort exception would not apply to Kuwait because her alleged misconduct, like her husband's, was not within the scope of her office or employment.

in nature, Kuwait's sovereign immunity remains intact. Subsection (A) of the FSIA non-commercial tort exception provides that claims based on a "discretionary function" of a foreign state are excepted from jurisdiction, "regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A); *see also Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987) (a state's "exercise of discretionary functions" cannot give rise to jurisdiction). The D.C. Circuit has analyzed the discretionary function exception by applying principles developed from an analogous provision of the Federal Tort Claims Act, construing it as preserving immunity for "decisions grounded in social, economic, and political policy." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921-22, *amended on other grounds*, 823 F.2d 606 (D.C. Cir. 1987) (quoting *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

In each claim for relief in which Leo ascribes direct action to Kuwait,[6] the allegations are that "Kuwait knowingly played a significant role" and "practically and materially assisted the Individual Defendants" in conducting wrongful acts. *See, e.g.,* Compl. ¶ 126. However, Leo alleges no facts about the "significant role" Kuwait allegedly played or how it "practically and materially assisted" the Individual Defendants other than to say Kuwait "authorized Defendant Al Naser's employment of Plaintiff as a domestic worker in the United States." *See, e.g.,* Compl. ¶ 127. None of Leo's remaining allegations about Kuwait – that it "failed to take affirmative steps to monitor its diplomats in the United States" (Compl. ¶ 48), "expected that its senior diplomats in the United States … would use the services of domestic servants" (*id*. ¶ 50), was aware through State Department circulars and reports of a pattern of mistreatment of domestic workers by its diplomats and "knew or should have known" about the Individual Defendants'

---

[6] This includes Leo's forced labor (Compl. ¶ 64); trafficking (*id*. ¶ 75); involuntary servitude (*id*. ¶ 81); fraud and constructive fraud (*id*. ¶ 126); and false imprisonment (*id*. ¶ 134) claims.

"specific abuse of Plaintiff but did not take steps to stop the abuse." (*id*. ¶¶ 45-58) – forms the basis for any of Leo's specific claims against Kuwait.

In any event, those allegations also concern Kuwait's discretionary functions, because the decision to allow diplomats to bring domestic staff with them when stationed in the United States, the handling of accusations against Kuwait and its employees, and the reception and implementation of State Department circulars and reports are all policy choices properly left to the discretion of a foreign state. This sort of policy choice is exactly the type of discretionary function that is protected under FSIA. As the D.C. Circuit has held, a foreign state's allegedly tortious acts are protected by the discretionary function exception where they are motivated by even a "measure of policy judgment." *MacArthur*, 809 F.2d at 922 (applying discretionary functions exception to tort claims against Peru arising out of the establishment of a chancery).

In *Swarna*, the court held that "Kuwait's decisions regarding compensation and benefits paid to its diplomats, and its decision whether and to what extent to comply with the State Department Circular Diplomatic Notes are grounded in Kuwait's social, economic, or political policies" and as such "are discretionary acts, thus, the FSIA's torts exception does not strip Kuwait of its sovereign immunity." 607 F. Supp. 2d at 527 (internal quotations omitted).[7] All the acts and omissions by Kuwait alleged here by Leo are similarly discretionary in nature. Therefore, these allegations cannot serve as the basis for non-commercial tort claims against Kuwait under FSIA.

---

[7] *See also Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 9 (1st Cir. 2002) (discretionary function exception barred claims against Costa Rica by owners of a private residence leased to it because establishing a consulate in that private residence implicated Costa Rica's policy choices); *Risk v. Halvorsen*, 936 F.2d 393, 396-97 (9th Cir. 1991) (discretionary function exception barred claims against Norway for allegedly assisted a Norwegian citizen in removing her children from the United States contrary to a court order).

### c. The non-commercial tort exception does not apply to any claims against Kuwait that are grounded in allegations of deception and misrepresentation

Finally, FSIA's non-commercial tort exception does not apply to Leo's claims of fraud, constructive fraud, and false imprisonment because those claims are based on allegations of misrepresentation or deceit, and therefore do not fall within the scope of the non-commercial tort exception. *See* 28 U.S.C. § 1605(a)(5)(B) (stating that there is no jurisdiction pursuant to the non-commercial tort exception for "any claim arising out of . . . misrepresentation [or] deceit").

Leo's fraud and constructive fraud claim (Compl. ¶¶ 120-29) is grounded on the allegation that the Individual Defendants "*misrepresented*" the conditions of Leo's employment to her, "*deceived* Plaintiff with the above-mentioned *misrepresentations*," and induced her to come to the United States based on those "*misrepresentations*," and that Leo relied on those "*misrepresentations*" (emphasis added) (*Id*. ¶¶ 121-24.) Thus, Leo's claim of fraud and constructive fraud plainly arises from allegations of misrepresentation and deceit, and the non-commercial tort exception to immunity therefore does not apply to them.

Similarly, Leo's claim against Kuwait for false imprisonment (Compl. ¶¶ 130-37) also arises out of allegations of deceit and misrepresentation. The core allegation supporting that claim is that the Individual Defendants used threats and coercion to make her "believe[] that she was confined within the Individual Defendants' home." (Compl. ¶ 132). Accordingly, Kuwait is immune from that claim as well.

## CONCLUSION

Because none of Leo's claims against Kuwait falls within the exceptions to immunity from suit conferred upon Kuwait by FSIA, this Court lacks both subject matter jurisdiction over Leo's claims and personal jurisdiction over Kuwait.  *See Amerada Hess Shipping*, 488 U.S. at 435, n.3; *Verlinden*, 461 U.S. at 485, n.5.  Dismissal of all claims against a foreign sovereign is the only appropriate path where immunity under FSIA has been established.  *See Owens v. Republic of Sudan*, 531 F.3d 884, 887  (D.C. Cir. 2008) ("unless the present action falls within one of the exceptions [to FSIA immunity] . . . the district court had no jurisdiction over the instant action and should have dismissed the case").  Therefore, the Court should grant Kuwait's motion to dismiss all claims brought against it by Leo.

Respectfully submitted,

 /s/ Neil H. Koslowe
Thomas B. Wilner (D.C. Bar # 173807)
Neil H. Koslowe (D.C. Bar # 361792)
Amanda Kosonen (D.C. Bar # 987057)
Justin Harrison (D.C. Bar # 502069)
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
Telephone:  (202) 508-8000
Facsimile:  (202 508-8001

*Counsel for Defendant*
The State of Kuwait

October 7,  2009